**UNITED STATES, Plaintiff,**

v.

**Staffagers GHOLSTON, Defendant.**

**No. 6:97–CR–214–ORL–18C.**

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 4, 2000.

William J. Sheaffer, William J. Sheaffer, P.A., Orlando, FL, for Staffagers Gholston.

Ana Escobar, U.S. Attorney's Office, Orlando, FL, for U.S.

## ORDER

G. KENDALL SHARP, Senior District Judge.

So Ordered.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## I. THE LAW

### A. *Applications for Leave to Appeal In Forma Pauperis*

■ A defendant has a right to have his conviction reviewed by a court of appeals. *Coppedge v. United States,* 369 U.S. 438, 441–42, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Under limited circumstances, a defendant also may appeal from his sentence. 18 U.S.C. § 3742(a). After filing a timely notice of appeal, an indigent defendant is immediately faced with court fees for docketing his appeal in the court of appeals, and with the cost of preparing the record, including a stenographic transcript of all or part of the trial proceedings. *Coppedge,* 369 U.S. at 442–43, 82 S.Ct. 917. If a defendant is unable to meet *either or both* of these expenses, he can perfect his appeal only by applying for leave to appeal *in forma pauperis.* 369 U.S. at 443, 82 S.Ct. 917.

■ Statutory provision for litigation *in forma pauperis* in the federal courts is made by 28 U.S.C. § 1915, authorizing any court of the United States to allow indigent persons to prosecute, defend or appeal suits without prepayment of costs. *Coppedge,* 369 U.S. at 441, 82 S.Ct. 917. The application, to be made to the district court in which the defendant was convicted, must conform to the requirements of 28 U.S.C. § 1915(a), and must include, in affidavit form, the defendant's representations of poverty, a statement of the case, and his belief that he is entitled to redress.

■ The following statutory language guides the district court in passing upon the application: "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). "Good faith" in the context of a criminal appeal is judged by an objective standard. *Coppedge,* 369 U.S. at 444, 82 S.Ct. 917. A defendant's good faith in a criminal appeal is demonstrated when he seeks appellate review of any issue not frivolous. 369 U.S. at 444–45, 82 S.Ct. 917. If an *in forma pauperis* appeal is attempted for reasons that may genuinely be characterized as the litigant's "bad faith," express authority exists in 28 U.S.C. § 1915(e) for dismissal of the cause as frivolous. 369 U.S. at 444–45, 82 S.Ct. 917.

■ If the district court finds the application is not in good faith, and therefore denies leave to appeal *in forma pauperis,*[1] the defendant may seek identical relief from the court of appeals. *Coppedge,* 369

---

1. On reference of a motion for leave to appeal *in forma pauperis,* a United States Magistrate

U.S. at 445, 82 S.Ct. 917. In considering such an application addressed to it, the district court's certificate is not conclusive, although it is entitled to weight.[2] 369 U.S. at 445–46, 82 S.Ct. 917.

The Federal Rules of Appellate Procedure also specify the procedure for taking appeals *in forma pauperis.* A party to an action in a district court who desires to proceed on appeal *in forma pauperis* must file *in the district court* a motion for leave so to proceed, together with an affidavit, showing in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs, the party's belief that he is entitled to redress, and a statement of the issues which that party intends to present on appeal. Fed. R.App.P. 24(a).[3] An appeal may not be

taken *in forma pauperis* if the district court certifies in writing that it is not taken in good faith, or finds that the party is otherwise not entitled to proceed *in forma pauperis.* 28 U.S.C. § 1915(a) (1996); Fed.R.App.P. 24(a).

The district court conducts an *in camera* review of the financial circumstances of the defendant—and of the arrangements between the defendant and retained counsel regarding the payment of litigation and appeals costs—before appointing substitute appellate counsel under the CJA to relieve retained counsel, and before relieving the defendant of his obligation to pay transcription costs and imposing the costs on the CJA fund. ADDENDUM FOUR, ELEVENTH CIRCUIT PLAN UNDER THE CRIMINAL JUSTICE ACT (d)(2), published in 1999 Flori-

---

Judge in the Middle District of Florida either would grant leave to appeal *in forma pauperis,* or would prepare a report and recommendation to the district judge recommending denial.

2. It is not the burden of the petitioner to show that his appeal has merit, in the sense that he is bound, or even likely, to prevail ultimately. *Coppedge,* 369 U.S. at 447–48, 82 S.Ct. 917. He is to be heard, as is any appellant in a criminal case, if he makes a rational argument on the law or facts. *Coppedge,* 369 U.S. at 448, 82 S.Ct. 917. It is the burden of the Government, in opposing an attempted criminal appeal in *forma pauperis,* to show that the appeal is lacking in merit, indeed, that it is so lacking in merit that the court would dismiss the case on motion of the Government, had the case been docketed and a record been filed by an appellant able to afford the expense of complying with those requirements. *Coppedge,* 369 U.S. at 448, 82 S.Ct. 917.

3. Rule 24(a) of the Rules of Appellate Procedure provides:

**Leave to Proceed on Appeal** *in Forma Pauperis* **From District Court to Court of Appeals.** A party to an action in a district court who desires to proceed on appeal *in forma pauperis* shall file in the district court a motion for leave so to proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that party is entitled to redress, and a statement of the issues which that party intends to present on appeal. If the motion is granted, the party

may proceed without further application to the court of appeals and without prepayment of fees or costs in either court or the giving of security therefor. If the motion is denied, the district court shall state in writing the reasons for the denial.

Notwithstanding the provisions of the preceding paragraph, a party who has been permitted to proceed in an action in the district court *in forma pauperis,* or who has been permitted to proceed there as one who is financially unable to obtain adequate defense in a criminal case, may proceed on appeal *in forma pauperis* without further authorization unless, before or after the notice of appeal is filed, the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled so to proceed, in which event the district court shall state in writing the reasons for such certification or finding.

If a motion for leave to proceed on appeal *in forma pauperis* is denied by the district court, or if the district court shall certify that the appeal is not taken in good faith or shall find that the party is otherwise not entitled to proceed in forma pauperis, the clerk shall forthwith serve notice of such action. A motion for leave so to proceed may be filed in the court of appeals within 30 days after service of notice of the action of the district court. The motion shall be accompanied by a copy of the affidavit filed in the district court, or by the affidavit prescribed by the first paragraph of this subdivision if no affidavit has been filed in the district court, and by a copy of the statement of reasons given by the district court for its action.

da Rules of Court—Federal (West) at 123 [hereinafter "ADDENDUM FOUR"]; 11th Cir.R. 24–1(a). Eleventh Circuit Rule 46–1(d) states the appellate obligations of retained counsel. Retained counsel for a criminal defendant must continue to represent that defendant until successor counsel either enters an appearance or is appointed under the Criminal Justice Act ["CJA"], and may not abandon or cease representation of a defendant except upon order of the Court. 11th Cir.R. 46–1(d)(1); *accord,* ADDENDUM FOUR; 11th Cir.R. 24–1(a). The district court is not generally authorized to appoint counsel on appeal to represent a defendant who was represented in the district court by retained counsel without first conducting an in camera review of the financial circumstances of the defendant and of the fee arrangements between the defendant and retained trial counsel. *Id.*

## B. *The Role of United States Magistrate Judges*

Congress has provided that either the "Court" or the United States Magistrate Judge may authorize counsel to obtain services that are required in connection with a matter over which the magistrate judge has jurisdiction. 18 U.S.C. § 3006A(e)(1). By Local Rule, the United States District Court for the Middle District of Florida has authorized magistrate judges to perform all assigned duties which are not inconsistent with the Constitution and laws of the United States, and has specifically authorized magistrate judges to administer the Court's CJA Plan. Local Rules 6.01(a), (c)(4); 4.13(a).

With the approval of the Judicial Council of the Eleventh Circuit, the Middle District of Florida adopted an Amended Criminal Justice Act Plan (as amended July 18, 1997). That CJA Plan defines the term "Court" so as to expressly authorize magistrate judges to perform functions under

the CJA Plan, except as limited by specific statutory requirements. *See* Local Rules 4.13(a); Amended Criminal Justice Act Plan, § 1.03.

## C. *Counsel and Transcripts Under the Criminal Justice Act*

 Congress has provided that defendants may request counsel at government expense under the CJA, and also may request "other services." 18 U.S.C. § 3006A(e). A defendant seeking counsel or services under the Criminal Justice Act has the burden of proving inadequate financial means to pay for the services. *See United States v. Gravatt,* 868 F.2d 585, 588 (3rd Cir.1989) (seeking appointed counsel); *accord, United States v. Sarsoun,* 834 F.2d 1358 (7th Cir.1987); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977). The defendant's burden does not relieve the district court of its responsibility to make further inquiry into the defendant's financial condition in order to ascertain whether the defendant is entitled to proceed under the CJA. *See Gravatt,* 868 F.2d at 588; *see also United States v. Moore,* 671 F.2d 139, 141 (5th Cir.1982). In many cases, the district court may properly limit its review to the financial information supplied on the standard form financial affidavit. *Anderson,* 567 F.2d at 840.

 Counsel for a person who is financially unable to obtain transcription services necessary for adequate representation may file an *ex parte* application requesting a transcript at government expense.[4] *See* 18 U.S.C. § 3006A(e) ("other services"); *United States v. Henderson,* 525 F.2d 247, 250–52 (5th Cir.1975) (§ 3006A(e) covers transcripts); *accord, United States v. Brown,* 443 F.2d 659, 660 (D.C.Cir.1970). The Court may authorize a party or counsel to obtain the transcript at government expense after appropriate inquiry[5] in an *ex parte* proceeding if the

---

**4.** The CJA Plan permits even privately-retained counsel to file *ex parte* applications for transcripts. *See* Amended Criminal Justice Act Plan, § 3.01(a).

**5.** The Criminal Justice Act does not further define an "appropriate inquiry" within the meaning of 18 U.S.C. § 3006A(e)(1). Nevertheless, the United States Court of Appeals for the Eleventh Circuit requires a "full inquiry in the manner of *Jackson v. Denno,* 378 U.S.

Court finds that the services are necessary and that the person is financially unable to obtain them. 18 U.S.C. § 3006A(e). Similarly, the CJA Plan requires either the district judge or the magistrate judge to consider whether the requested transcripts are necessary for an adequate defense, and whether the defendant is financially unable to obtain the services. Local Rules 4.13(a) and 6.01(c)(4); Amended Criminal Justice Act Plan, §§ 1.03 and 3.01. Congress has limited payment to $1,000 unless the Court or magistrate judge certifies that payment in excess of that limit is necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess is approved by the chief judge of the circuit. 18 U.S.C. § 3006A(e)(3).

## II. APPLICATION TO GHOLSTON

■ Gholston seeks leave to proceed on appeal *in forma pauperis.* Docket No. 49. He does not presently seek appointment of counsel on appeal, but has sent a letter to the Clerk of Court requesting a copy of his entire court file at government expense. Docket No. 50 (no certificate of service). Although Gholston's affidavit is sufficient to demonstrate that he is indigent, leave to appeal *in forma pauperis* from his sentence should nevertheless be **DENIED.** Judged by an objective standard, Gholston seeks appellate review of issues that are frivolous.

On November 4, 1997, Gholston filed a plea agreement in which he agreed to plead guilty to Count One of the information, possession with intent to distribute 200 grams of cocaine base. Docket No. 13 at 1. In Paragraph 9 of the plea agreement, Gholston admitted that he possessed 200 grams of "crack" cocaine with the intent to distribute it in Alabama. *See* Docket No. 13 at 15. Moreover, as part of the plea agreement, Gholston *expressly waived his right to appeal the sentence,* directly or collaterally, on any ground ex-

cept for an upward departure or a sentence above the statutory maximum or a sentence in violation of the law apart from the sentencing guidelines. Docket No. 13 at 12, paragraph 9. Gholston entered into the plea agreement and waiver of appeal freely and voluntarily. *See* Plea Agreement, Docket No. 13 at 13, paragraph 8 ("defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant ...").

On April 16, 1998, the Honorable G. Kendall Sharp sentenced Gholston. Docket No. 30. On the government's motion [Docket No. 28], Judge Sharp recognized Gholston's substantial assistance at the time of sentencing, and reduced Gholston's offense level from 31 (criminal history category V; 168 – 210 months) to offense level 28 (130 – 162 months). Docket Nos. 30, 36. Judge Sharp sentenced Gholston to 140 months. incarceration, followed by five years supervised release. Docket No. 30.

In a motion for an extension of time in which to surrender, counsel for Gholston thoroughly and fully laid out the extent of Gholston's cooperation with the government. Docket No. 32. Judge Sharp allowed Gholston to remain released until November 1, 1998 so that Gholston could complete his cooperation. Docket No. 32. The government later filed a Rule 35(b) motion asking Judge Sharp to further recognize Gholston's substantial assistance after sentencing. Docket No. 35. Counsel for Gholston had nothing further to say, and did not believe that another hearing was necessary. Transcript of September 8, 2000 hearing.

On May 12, 1999, Judge Sharp granted the government's Rule 35(b) motion [Docket No. 35], and further reduced Gholston's

368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), into the financial ability of the defendant...." *See Wood v. United States,* 387 F.2d 353, 354 (5th Cir.1967) (ability of the defendant to re-

tain counsel); *United States v. Ellis,* 154 F.R.D. 697, 699 (M.D.Fla.1993) (ability of the defendant to retain counsel).

sentence from 140 months to 116 months. Docket No. 36 (reduction to offense level 25, imprisonment range of 100–125 months). Gholston then filed motions for a hearing in order to try to convince the Court that his substantial assistance to the government merited an even larger reduction. Judge Sharp denied the motions. Docket Nos. 37 – 43.

On July 13, 2000, Gholston filed a *pro se* notice of appeal from his "final sentence" pursuant to 18 U.S.C. § 3742(a).[6] Docket No. 45. The notice of appeal contained no certificate of service. On July 24, 2000, Judge Sharp granted Gholston's motion dated July 13, 2000 for permission to file an appeal out of time. Docket No. 44. Judge Sharp denied the notice of appeal as an "improper motion" on August 16, 2000. Docket No. 45. On August 24, 2000, Gholston filed another *pro se* notice of appeal "from the Judgement of the Court Order dated August 16, 2000." Docket No. 48 (also containing no certificate of service). Docket No. 48. The Court order dated August 16, 2000 from which Gholston now seeks to appeal was Judge Sharp's order denying the first notice of appeal as an improper motion. Docket No. 45.

On August 28, 2000, Gholston filed his application to proceed *in forma pauperis* on appeal. Docket No. 49. At present, Gholston seeks leave merely to proceed *in forma pauperis,* and does not also request the appointment of counsel. Docket No. 49. Despite his waiver of his right to appeal from his sentence in the plea agreement, Gholston wishes to raise two sentencing issues on appeal:

1. Whether District Court forced a Breach of Plea Agreement by not granting a hearing in the above case.

2. Whether Defendant–Appellant is entitled to relief pursuant to Prosecutor's induced broken promise of a further sentence reduction.

Motion to Proceed *In Forma Pauperis,* Docket No. 49.

On September 8, 2000, the Court held an *ex parte* hearing on Gholston's motion to proceed *in forma pauperis.* The attorney whom Gholston had retained for proceedings in the district court, William J. Scheaffer, appeared at the hearing. Gholston remained incarcerated at the federal correctional institute in Marianna, Florida.. The Court conducted a review of Gholston's financial circumstances as required by 11th Cir.R. 46–1(d)(1) and ADDENDUM FOUR. The Court reviewed the fee arrangements between Gholston and retained counsel. Counsel's fee was sufficient to cover only plea negotiations, change of plea, and sentencing, but not an appeal. The financial affidavit, Docket No. 49, shows that Gholston is financially unable to pay for appellate counsel.[7] He is indigent.

Although Gholston is indigent, the Court next must determine whether Gholston attempts to appeal from his sentence in good faith. If Gholston has knowingly, freely, and voluntarily waived his right to appeal the sentencing issues that he now seeks to raise on appeal, this Court cannot certify that Gholston appeals in good faith. Gholston cannot both seek to enforce the plea agreement by contending that it has been "breached," yet ignore his own waiver of the right to appeal as set forth in the plea agreement.

██ Pursuant to *United States v. Buchanan,* 131 F.3d 1005 (11th Cir.1997), judges normally question each defendant at rearraignment to confirm that his waiver of the right to appeal his sentence is freely and voluntarily made. No transcript has yet been made of Gholston's change of plea hearing on December 18, 1997 [Docket No. 20].

Nevertheless, counsel for Gholston assures this Court that he reviewed every

---

6. This Court has not endeavored to determine the timeliness of Gholston's notice of appeal in assessing good faith.

7. Before Scheaffer entered the case, the Federal Public Defender had appeared for Gholston Docket No. 4.

line of the plea agreement with Gholston before he signed it, and that Gholston's waiver of the right to appeal from his sentence was free and voluntary. *See* Transcript of September 8, 2000 hearing. Counsel could not in good faith assert either of the two issues raised by Gholston because they are frivolous. *See* Transcript of September 8, 2000 hearing. Indeed, in the exercise of his professional and ethical judgment as an officer of this Court, counsel chose not to raise those issues.[8] If required to represent Gholston on appeal of his sentence, counsel would have to file a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). *See* Transcript of September 8, 2000 hearing. At the *ex parte* hearing, the Court therefore allowed Scheaffer to withdraw from any further representation of Gholston on appeal. Accordingly, it is

**RECOMMENDED** that the Court certify in writing, pursuant to 28 U.S.C. § 1915(a)(3), that Gholston's appeal from his sentence **is not taken in good faith** because Gholston has waived his right to appeal from his sentence; and it is

**FURTHER RECOMMENDED** that Gholston's motion to proceed *in forma pauperis* on appeal [Docket No. 49] should therefore be **DENIED;** and it is

**FURTHER RECOMMENDED** that Gholston's motion for a copy of his entire Court file [Docket No. 50] should be **DENIED.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

---

8. William J. Scheaffer is one of the Middle District of Florida's leading criminal defense attorneys. As the Honorable Peter Fay once stated in the context of a civil proceeding:

All attorneys, as "officers of the court," owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself.

*Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1546 (11th Cir.1993). Scheaffer exemplifies Judge Fay's standard.